66 F.3d 213
 41 ERC 1861, 26 Envtl. L. Rep. 20,061,
95 Cal. Daily Op. Serv. 7295,
95 Daily Journal D.A.R. 12,435
 STATE OF ARIZONA, Grant Woods, the Arizona Attorney General,
Arizona Department of Environmental Quality,
Edward Z. Fox, Director, Plaintiffs-Appellees,
v.
COMPONENTS INCORPORATED, a Delaware Corporation,
Plaintiff-Intervenor-Appellant,
v.
NUCOR CORPORATION, Defendant-Appellee.
 No. 93-16966.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 11, 1995.
Decided Sept. 15, 1995.
 
 Shane R. Swindle, Dalton, Gotto, Samson & Kilgard, Phoenix, AZ, for plaintiff-intervenor-appellant.
 Kevin R. Keating, Deputy Attorney General, Phoenix, AZ, for plaintiffs-appellees.
 Rolf von Oppenfeld, Kane, Jorden & von Oppenfeld, Phoenix, AZ, for defendant-appellee.
 Craig J. Reece, Assistant City Attorney, Phoenix, AZ, for amicus curiae.
 Appeal from the United States District Court for the District of Arizona.
 Before: GIBSON,* HUG, and FERGUSON, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 Plaintiff-intervenor, Components Incorporated ("Components"), appeals the district court's approval of a settlement agreement between the State of Arizona ("the State") and Nucor Corporation ("Nucor") resolving Nucor's liability under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. Sec. 9607 et seq., for contaminated ground water found within the West Central Phoenix State Superfund Study Area ("Study Area"). The district court's order is reported under State of Arizona ex rel. Woods v. Nucor Corporation, 825 F.Supp. 1452 (D.Ariz.1992). Both Nucor and Components were past owners and operators of electronics manufacturing facilities in the Study Area. Components challenges the settlement agreement on the ground that the State and the district court lacked sufficient information regarding the extent of the contamination, the probable total cost of cleanup, and a reasonable basis for determining Nucor's share of liability to approve the consent decree. In addition, Components contends that the settlement violates CERCLA because it offered Nucor an unconditional release from all future liability without providing for any reopener provisions. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 I.
 Sufficiency of Information
 
 2
 "We exercise considerable restraint in reviewing a district court approval of a CERCLA settlement." United States v. Montrose Chemical Corp. of California, 50 F.3d 741, 746 (9th Cir.1995). We will uphold the district court's decision unless the court abused its discretion in accepting the settlement. See id.
 
 
 3
 Components claims that neither the State nor the district court possessed sufficient information regarding the extent of contamination, the total cost of cleanup, and other technical factors to determine Nucor's proportionate liability for the environmental damage at the Study Area. We disagree. We conclude that the district court was within its discretion to hold that the State had sufficient information regarding the extent of contamination and cost of cleanup to enter into a settlement agreement with Nucor. As the district court pointed out, the State and its environmental consultants had obtained "extensive water quality data" by conducting over fifty preliminary assessments and site investigations, by collecting an aerial photo history of the Study Area, and by soliciting and receiving "detailed information regarding property ownership, manufacturing processes, and chemical usage and/or disposal practice for hundreds of facilities in the Study Area." Nucor, 825 F.Supp. at 1459. Moreover, the State's estimate of the total cost of cleanup was a "conservative" one, as the figure was based on a comparison with another site at Phoenix Goodyear Airport ("PGA") which contained a level of contaminants (350,000 ppm) far exceeding the highest potential level in the Study Area (6,000 ppm). Id. at 1460. The PGA site had a similar lithology, hydrology, and areal extent of contamination as those found in the Study Area, and contained the same contaminants. In addition, PGA employed the same method of treatment as that proposed for the Study Area. Id.
 
 
 4
 Components contends that the State could not accurately estimate Nucor's proportionate liability for contamination at the Study Area by the indexed sales method. While it is true that an examination of the relative waste disposal methods and volumetric data of waste production might provide a more accurate measure of Nucor's share of liability, such records were not kept. Moreover, the State's estimate of Nucor's liability might be conservative because the State assumed that only three parties contributed to the contamination, despite the State's belief that polluters other than Nucor and Components existed and could be held liable in future actions. Id. at 1462. Therefore, we agree with the district court's conclusions that "the indexed sales method is reasonable." The district court therefore had sufficient information to determine Nucor's proportionate liability.
 
 II.
 
 5
 Need for a Remedial Investigation and Feasibility Study
 
 
 6
 Components argues that the settlement violates CERCLA Sec. 9622(e)(3)(A) because it failed to include a formal "remedial investigation and feasibility study ("RI/FS")." However, CERCLA does not require a formal RI/FS under the circumstances present in this case.
 
 
 7
 Congress enacted CERCLA in 1980 to ensure prompt and efficient cleanup of hazardous waste. Under section 9607, CERCLA imposes the costs of cleaning up contaminated facilities or sites on the parties responsible for the contamination. In 1986, Congress added section 9622, pursuant to the Superfund Amendments and Reauthorization Act ("SARA"). Section 9622 deals with settlements and it is this section, specifically section 9622(e)(3)(A),[1] that Components contends requires the State to conduct a formal RI/FS prior to approval of a settlement.
 
 
 8
 The fatal flaw with Components' argument, however, is that section 9622 applies only to settlements entered into between the United States and potentially responsible parties. It has no bearing on settlements between states and potentially responsible parties. This is clear from the plain language of the statute. Section 9622(a) states that "The President, in his discretion, may enter into an agreement with any person ... to perform any response action ... if the President determines that such action will be done properly by such person." 42 U.S.C. Sec. 9622(a) (emphasis added). Nowhere does the statute indicate that anyone other than "the President" is bound by this section.
 
 
 9
 Section 9622(e)(3)(A), on which Components relies to support its argument that a formal RI/FS must precede a settlement approval, provides no such support. Section 9622 gives the EPA specific authority to enter into settlement agreements, and section 9622(e)(3)(A) allows the EPA to issue a nonbinding preliminary allocation of responsibility to "expedite settlements ... and remedial action." 42 U.S.C. Sec. 9622(e)(3)(A). Even if we were to conclude that this section somehow binds the State, this settlement does not attempt to provide a nonbinding preliminary allocation of responsibility, "allocat[ing] percentages of the total cost of response among potentially responsible parties." 42 U.S.C. Sec. 9622(e)(3)(A). The agreement addresses only Nucor's liability.
 
 
 10
 Furthermore, this case is not a remedial action. Rather, it is a cost-recovery action in which the State is recovering response costs incurred in cleaning up a site from the responsible parties. 42 U.S.C. Sec. 9607. Section 9622(a) through (f) refer only "to actual remedial actions as opposed to agreements for the recovery of costs occasioned by environmental damage." See United States v. Hercules, 961 F.2d 796, 799 (8th Cir.1992). See also 40 C.F.R. Sec. 300.430(a)(2) ("The purpose of the remedial investigation/feasibility study (RI/FS) is to assess site conditions and evaluate alternatives to the extent necessary to select a remedy.") (Emphasis added).
 
 
 11
 Under the plain language of the statute, CERCLA does not require a formal RI/FS prior to approval of a state settlement agreement. In this case, the State had performed extensive environmental studies and the district court believed that the State had sufficient information to rationally enter into the terms of the settlement agreement. We agree with the district court that even though a formal RI/FS was not completed in this case, the State had sufficient information to rationally apportion Nucor's liability. Nucor, 825 F.Supp. at 1463. We decline to impose a rigid judicially-created requirement that every state settlement agreement must be preceded by a formal RI/FS before its approval.
 
 III.
 
 12
 Unconditional Release and Lack of Reopeners
 
 
 13
 Components complains that the district court erred in approving a settlement which gave Nucor an overbroad, unconditional release. Specifically, Components claims that the settlement violates CERCLA Sec. 9622(f)(6)(A) by failing to include any reopener provisions, which would allow the Government to seek further damages from a settling party such as Nucor in the event that future investigation should uncover pollution unknown to the parties at the time of settlement.
 
 
 14
 The State and Nucor both assert that Components should not be allowed to raise the issue of reopeners because it had failed to do so with the district court and therefore it waived the issue. Generally, "an appellate court will not hear an issue raised for the first time on appeal." Whittaker Corp. v. Execuair Corp., 953 F.2d 510, 515 (9th Cir.1992). Although there is no bright-line rule to determine whether a matter has been raised below, "a workable standard ... is that the argument must be raised sufficiently for the trial court to rule on it." In re E.R. Fegert, Inc., 887 F.2d 955, 957 (9th Cir.1989).
 
 
 15
 For support that it raised the issue, Components points only to a footnote in the record that mentioned reopeners. However, Components did not argue in the footnote that the settlement required a reopener nor that it violated CERCLA by failing to include a reopener. Indeed, nowhere in the district court's opinion does the issue of reopeners appear, which is further indication that Components did not raise the issue with the district court or at least did not raise it "sufficiently". The Second Circuit in In re Cuyahoga Equipment Corp., 980 F.2d 110 (2d Cir.1992), confronted a similar question on the waiver of CERCLA issues. The court there held that an issue is waived when an appellant, "in its submission to the district court opposing the approval motion and in its reply papers, other than challenging the fairness and reasonableness of the settlement, ... failed to raise any substantive objection to it." Id. at 117. This case presents a similar situation. We decline to review the reopener issue because it was waived when Components failed to raise it sufficiently for the district court to rule on it.
 
 
 16
 However, even if we determined that Components raised the issue sufficiently for us to review it, the argument would nonetheless fail. As with section 9622(e)(3)(A), section 9622(f)(6)(A) is not applicable to state settlements in which the EPA is not involved. The district court did not abuse its discretion in approving the CERCLA settlement in this case.
 
 
 17
 AFFIRMED.
 
 
 
 *
 Honorable Floyd R. Gibson, Senior United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation
 
 
 [1]
 42 U.S.C. Sec. 9622(e)(3)(A) provides in relevant part:
 When it would expedite settlements under this section and remedial action, the President may, after the completion of the remedial investigation and feasibility study, provide a nonbinding preliminary allocation of responsibility which allocates percentages of the total cost of response among potentially responsible parties at the facility.