**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PEBBLE BEACH COMPANY, a
California General Partnership,
          *Plaintiff-Appellant,*

          v.

MICHAEL CADDY, an individual,
          *Defendant-Appellee.*

No. 04-15577

D.C. No.
CV-03-04550-PJH

OPINION

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted
April 5, 2006—San Francisco, California

Filed July 12, 2006

Before: Mary M. Schroeder, Chief Judge, Stephen S. Trott
and Andrew J. Kleinfeld, Circuit Judges.

Opinion by Judge Trott

## COUNSEL

Stephen M. Trattner, Washington, D.C., for the plaintiff-appellant.

Mikal J. Condon, Boies, Schiller & Flexner LLP, Oakland, California, for the defendant-appellee.

## OPINION

TROTT, Circuit Judge:

Pebble Beach Company ("Pebble Beach"), a golf course resort in California, appeals the dismissal for lack of jurisdiction of its complaint against Michael Caddy ("Caddy"), a small-business owner located in southern England. In addition, Pebble Beach seeks review of an order denying its request for an opportunity to conduct jurisdictional discovery. Because Caddy did not expressly aim his conduct at California or the United States, we hold that the district court determined correctly that it lacked personal jurisdiction. Given the nature of the claims and the facts of this case, we conclude also that the district court properly exercised its discretion by denying Pebble Beach's motion to conduct additional jurisdictional discovery. Thus, we affirm.

## I

Pebble Beach is a well-known golf course and resort located in Monterey County, California. The golf resort has

used "Pebble Beach" as its trade name for 50 years. Pebble Beach contends that the trade name has acquired secondary meaning in the United States and the United Kingdom. Pebble Beach operates a website located at *www.pebblebeach.com.*

Caddy, a dual citizen of the United States and the United Kingdom occupies and runs a three-room bed and breakfast, restaurant, and bar located in southern England. Caddy's business operation is located on a cliff overlooking the pebbly beaches of England's south shore, in a town called Barton-on-Sea. The name of Caddy's operation is "Pebble Beach," which, given its location, is no surprise. Caddy advertises his services, which do not include a golf course, at his website, *www.pebblebeach-uk.com.* Caddy's website includes general information about the accommodations he provides, including lodging rates in pounds sterling, a menu, and a wine list. The website is not interactive. Visitors to the website who have questions about Caddy's services may fill out an on-line inquiry form. However, the website does not have a reservation system, nor does it allow potential guests to book rooms or pay for services on-line.

Except for a brief time when Caddy worked at a restaurant in Carmel, California, his domicile has been in the United Kingdom.

On October 8, 2003, Pebble Beach sued Caddy under the Lanham Act and the California Business and Professions Code for intentional infringement and dilution of its "Pebble Beach" mark. Caddy moved to dismiss the complaint for lack of personal jurisdiction and insufficiency of service of process. On March 1, 2004, the district court granted Caddy's motion on personal jurisdiction grounds, without addressing the insufficiency of service of process issue. The district court denied also Pebble Beach's request for additional discovery. Pebble Beach timely appealed to the Ninth Circuit.

**II**

We review de novo the district court's determination that it does not have personal jurisdiction over Caddy. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). We review a district court's decision to grant or deny discovery on jurisdictional facts for abuse of discretion. *Cheng v. Boeing Co.*, 708 F.2d 1406, 1412 (9th Cir.), *cert. denied,* 464 U.S. 1017 (1983).

## A.  Personal Jurisdiction

The arguments are straight forward. Caddy contends that the district court may not assert personal jurisdiction over him, and, consequently, that the complaint against him was properly dismissed. Pebble Beach argues in return that Caddy is subject to specific personal jurisdiction in California, or, alternatively, in any forum in the United States, because he has expressly aimed tortious conduct at California and the United States.[1] Pebble Beach asserts that it may look to the entire United States as a litigation forum pursuant to Federal Rule of Civil Procedure 4(k)(2) if Caddy's contacts with California are insufficient to warrant jurisdiction. As explained more thoroughly below, Rule 4(k)(2) may, in limited circumstances, be a basis for establishing jurisdiction where "the United States serves as the relevant forum for a minimum contacts analysis." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002).

When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction over the defendant. *See Harris*

---

[1]Caddy's contacts with California or the United States are not continuous or substantial enough to establish general jurisdiction. *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002) Thus, we consider only the question of whether Caddy's contacts are sufficient to establish specific jurisdiction.

*Rutsky & Co. Ins. Serv., Inc. v. Bell & Clement Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003). However, this demonstration requires that the plaintiff "make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Doe v. Unocal*, 248 F.3d 915, 922 (9th Cir. 2001) (internal citations omitted). Moreover, for the purpose of this demonstration, the court resolves all disputed facts in favor of the plaintiff, here, Pebble Beach. *Id.*

**[1]** The general rule is that personal jurisdiction over a defendant is proper if it is permitted by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process. *Fireman's Fund Ins. Co. v. Nat. Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1996). Here, both the California long-arm statute and Rule 4(k)(2)—what is often referred to as the federal long-arm statute—require compliance with due process requirements. See *Harris Rutsky*, 328 F.3d at 1129 (California long-arm statute); *Unocal*, 248 F.3d at 922 (applying Rule 4(k)(2) as a federal long-arm statute). Consequently, under both arguments presented by Pebble Beach, resolution turns on due process.

**[2]** For due process to be satisfied, a defendant, if not present in the forum, must have "minimum contacts" with the forum state such that the assertion of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945).

**[3]** In this circuit, we employ the following three-part test to analyze whether a party's "minimum contacts" meet the Supreme Court's directive. This "minimum contacts" test is satisfied when,

> (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-

related activities, and (3) the exercise of jurisdiction is reasonable.

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995). The plaintiff bears the burden of satisfying the first two prongs of the "minimum contacts" test. *Schwarzenegger*, 374 F.3d at 802 (internal citations omitted). Here, Pebble Beach's arguments fail under the first prong. Accordingly, we need not address whether the claim arose out of or resulted from Caddy's forum-related activities or whether an exercise of jurisdiction is reasonable per the factors outlined by the Supreme Court in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985).

Under the first prong of the "minimum contacts" test, Pebble Beach has the burden of establishing that Caddy "has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum." *Bancroft*, 223 F.3d at 416. We have refined this to mean whether Caddy has either (1) "purposefully availed" himself of the privilege of conducting activities in the forum, or (2) "purposefully directed" his activities toward the forum. *Schwarzenegger*, 374 F.3d at 802. Although we sometimes use the phrase "purposeful availment" to include both purposeful availment and direction, "availment and direction are, in fact, two distinct concepts." *Id.*

[4] Thus, in order to satisfy the first prong of the "minimum contacts" test, Pebble Beach must establish either that Caddy (1) purposefully availed himself of the privilege of conducting activities in California, or the United States as a whole, or (2) that he purposefully directed its activities toward one of those two forums. *Id.*

### 1. Purposeful Availment

**[5]** Pebble Beach fails to identify any conduct by Caddy that took place in California or in the United States that adequately supports the availment concept. Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum. *Id.* at 803. Evidence of direction generally consists of action taking place outside the forum that is directed at the forum. *Id.* (suggesting evidence of purposeful direction includes activities such as distribution and advertising). All of Caddy's action identified by Pebble Beach is action taking place outside the forum. Thus, if anything, it is the type of evidence that supports a purposeful direction analysis. Accordingly, we reject Pebble Beach's assertion that Caddy has availed himself of the jurisdiction of the district court under both concepts and proceed only to determine whether Caddy has purposefully directed his action toward one of two applicable forums.

### 2. Purposeful Direction: California

**[6]** In *Calder v. Jones*, the Supreme Court held that a foreign act that is both aimed at and has effect in the forum satisfies the first prong of the specific jurisdiction analysis. 465 U.S. 783 (1984). We have commonly referred to this holding as the "*Calder* effects test." *See*, *e.g.*, *Bancroft*, 223 F.3d at 1087. To satisfy this test the defendant "must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Id.* at 1088 (citing *Panavision Int'l v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998)). However, referring to the *Calder* test as an "effects" test can be misleading. For this reason, we have warned courts not to focus too narrowly on the test's third prong—the effects prong—holding that "something more" is needed in addition to a mere foreseeable effect. *Bancroft*, 223 F.3d at 1087. Specifically we have stated,

Subsequent cases have struggled somewhat with *Calder*'s import, recognizing that the case cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state will always give rise to specific jurisdiction. We have said that there must be "something more" . . . . We now conclude that "something more" is what the Supreme Court described as "express aiming" at the forum state.

*Id.* Thus, the determinative question here is whether Caddy's actions were "something more"—precisely, whether his conduct was expressly aimed at California or alternatively the United States.

[7] We conclude that Caddy's actions were not expressly aimed at California. The only acts identified by Pebble Beach as being directed at California are the website and the use of the name "Pebble Beach" in the domain name. These acts were not aimed at California and, regardless of foreseeable effect, are insufficient to establish jurisdiction.

In support of its contention that Caddy has expressly aimed conduct at California, Pebble Beach identifies a list of cases where we have found that a defendant's actions have been expressly aimed at the forum state sufficient to establish jurisdiction over the defendant. Pebble Beach asserts that these cases show that Caddy's website and domain name, coupled by his knowledge of the golf resort as a result of his working in California, are sufficient to satisfy the express aiming standard that it is required to meet. We disagree. If anything, these cases establish that "something more"—the express aiming requirement—has not been met by Pebble Beach.

In *Panavision*, the defendant, a cybersquatter, registered the plaintiff's trademark as part of a domain name. 141 F.3d at 1318-19. The use of the domain name by the defendant prevented the plaintiff from registering its own domain name and

was part of a plan to obtain money from the plaintiff in exchange for the rights to the domain name. *Id.* The court found personal jurisdiction, not merely because of the domain name use, but because the plan was expressly aimed at the plaintiff:

> [The Defendant] did considerably more than simply register Panavision's trademarks as his domain names on the Internet. He registered those names as part of a scheme to obtain money from Panavision. Pursuant to that scheme, he demanded $13,000 from Panavision to release the domain names to it. His acts were aimed at Panavision in California, and caused it to suffer injury there.

*Id.* at 1318.

Here, Caddy has hatched no such plan directed at Pebble Beach. He is not a cybersquatter trying to obtain money from Pebble Beach. His operation is legitimate and his website relates directly to that end.

In *Metropolitan Life Insurance Co. v. Neaves*, similar to *Panavision*, the defendant's alleged plan to defraud the insurance company involved direct interaction with the forum state. 912 F.2d 1062 (1990). We held that the action at issue satisfied *Calder*'s "effects test" because the defendant sent a letter to the forum state addressed to the plaintiff, thereby defrauding a forum state entity. *Id.* at 1065.

In *Bancroft & Masters, Inc. v. Augusta National Inc.*, a dispute over the domain name *www.masters.org* was triggered by a letter sent by Augusta that required Bancroft & Masters, a computer corporation in California, to sue or lose the domain name. 223 F.3d 1082 (9th Cir. 2000). We stated that the "expressly aiming" standard was satisfied when "individualized targeting was present." *Id.* at 1088. We reasoned that specific jurisdiction was proper and that the expressly aiming

requirement was satisfied because the letter sent by Augusta constituted "individualized targeting." *Id.*

The defendant in both *Bancroft* and *Metropolitan Life* did "something more" than commit a "foreign act with foreseeable effects in the forum state." *Id.* at 1087. In both cases this "individualized targeting" was correspondence that was a clear attempt to force the plaintiff to act. Here, Caddy engaged in no "individualized targeting." There is no letter written by Caddy forcing Pebble Beach to act. The only substantial action is a domain name and non-interactive informative web site along with the extraneous fact that Caddy had worked, at some point in his past, in California. This does not constitute "individualized targeting." Indeed, to hold otherwise would be contrary to what we have suggested in earlier case law.

**[8]** In *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2000), we cited *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418-20 (9th Cir. 1997), for the proposition that when a "website advertiser [does] nothing other than register a domain name and post an essentially passive website" and nothing else is done "to encourage residents of the forum state," there is no personal jurisdiction. Similarly, in *Panavision* we stated, "We agree that simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another." 141 F.3d at 1322. Why? Because "the objectionable webpage simply was not aimed intentionally at the [forum state] knowing that harm was likely to be caused there," and "[u]nder the effects doctrine, 'something more' was required to indicate that the defendant purposefully directed its activity in a substantial way to the forum state." *Rio Properties*, 130 F.3d at 120 (citing *Cybersell, Inc.*, 130 F.3d at 418, 420) (internal quotation marks omitted).[2]

---

[2]In *Rio Properties* it was shown that the defendant did more than put up a passive website. *Id.* at 1021. Indeed, the defendant was actively com-

**[9]** These cases establish two salient points. First, there can be no doubt that we still require "something more" than just a foreseeable effect to conclude that personal jurisdiction is proper. *Bancroft*, 223 F.3d at 1087. Second, an internet domain name and passive website alone are not "something more," and, therefore, alone are not enough to subject a party to jurisdiction. *Rio Properties*, 284 F.3d at 1020; *Panavision*, 141 F.3d at 1322.

In contrast to those cases where jurisdiction was proper because "something more" existed, the circumstances here are more analogous to *Schwarzenegger v. Fred Martin Motor Co.* 374 F.3d 797 (9th Cir. 2004). In *Schwarzenegger*, we determined that personal jurisdiction based solely on a non-interactive print advertisement would be improper. *Id.* at 807. In *Schwarzenegger*, the former movie star and current California governor, brought an action in California alleging that an Ohio car dealership used impermissibly his "Terminator" image in a newspaper advertisement in Akron, Ohio. *Id.* at 800. The federal district court in California dismissed the complaint for lack of personal jurisdiction. *Id.* Applying the *Calder* "effects test," we affirmed, concluding that even though the advertisement might lead to eventual harm in California this "foreseeable effect" was not enough because the advertisement was expressly aimed at Ohio rather than California. *Id.* at 807. We concluded that, without "something more" than possible effect, there was simply no individualized targeting of California, or the type of wrongful conduct, that could be construed as being directed at the forum state. *Id.* We held that Schwarzenegger had not established jurisdiction over the car dealership.

**[10]** Pebble Beach, like Schwarzenegger, relies almost exclusively on the possible foreseeable effects. Like Schwar-

peting with the plaintiff by targeting Nevada consumers with radio and print media. *Id.* Accordingly, in *Rio Properties* there was no doubt that action was expressly directed at Nevada and that jurisdiction was proper.

zenegger, Pebble Beach's arguments depend on the possible effects of a non-interactive advertisement—here, Caddy's passive website. Notably absent in both circumstances is action that can be construed as being expressly aimed at California. The fact that Caddy once lived in California and therefore has knowledge of the Pebble Beach golf resort goes to the foreseeable effect prong of the "effects test" and is not an independent act that can be interpreted as being expressly aimed at California. Consistent with the dicta of *Cybersell*, *Panavision*, and *Rio Properties*, we reject also any contention that a passive website constitutes expressed aiming. Thus, today, we extend the holding of *Schwarzenegger* to the situations described in *Panavision* and *Rio Properties*, where the sole basis for asserting jurisdiction is a non-interactive passive website. As with the print advertisement in Schwarzenegger, the fact that Caddy's website is not directed at California is controlling.

### 3.  Purposeful Direction: United States

Even if Pebble Beach is unable to show purposeful direction as to California, Pebble Beach can still establish jurisdiction if Caddy purposefully directed his action at the United States. This ability to look to the aggregate contacts of a defendant with the United States as a whole instead of a particular state forum is a product of Rule 4(k)(2).[3] *See Glencore Crain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1126 (9th Cir. 2002). Thus, Rule 4(k)(2) is commonly referred to as the federal long-arm statute. *Id.*

---

[3]Rule 4(k)(2) provides in whole,

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

The exercise of Rule 4(k)(2) as a federal long-arm statute requires the plaintiff to prove three factors. *Id.* First, the claim against the defendant must arise under federal law. *Id.* Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process. *Id.* Here, the first factor is satisfied because Pebble Beach's claims arises under the Lanham Act. And, as established above, the second factor is satisfied as Caddy is not subject to personal jurisdiction of California, or any state court.

**[11]** That leaves the third factor—due process. The due process analysis is identical to the one discussed above when the forum was California, except here the relevant forum is the entire United States. And, as with the foregoing analysis, our resolution here depends on whether Caddy's actions were purposefully directed at the United States. Pebble Beach contends that the "purposeful direction" requirement is satisfied under the *Calder* "effects test" because Caddy's operation is expressly aimed at the United States. Pebble Beach makes four arguments.

First, Pebble Beach claims that because Caddy selected a ".com" domain name it shows that the United States was his "primary" market and that he is directly advertising his services to the United States. Second, Pebble Beach asserts that his selection of the name "Pebble Beach" shows the United States is his primary target because "Pebble Beach" is a famous United States trademark. Third, Pebble Beach asserts that Caddy's intent to advertise to the United States is bolstered by the fact that Caddy's facilities are located in a resort town that caters to foreigners, particularly Americans. Finally, Pebble Beach asserts that a majority of Caddy's business in the past has been with Americans.

**[12]** As before, Pebble Beach's arguments focus too much on the effects prong and not enough on the "something more"

requirement. First, following the rationale articulated in *Cybersell*, *Rio Properties*, and *Panavision*, we conclude that the selection of a particular domain name is insufficient by itself to confer jurisdiction over a non-resident defendant, even under Rule 4(k)(2), where the forum is the United States. The fact that the name "Pebble Beach" is a famous mark known world-wide is of little practical consequence when deciding whether action is directed at a particular forum via the world wide web. Also of minimal importance is Caddy's selection of a ".com" domain name instead of a more specific United Kingdom or European Union domain. To suggest that ".com" is an indicator of express aiming at the United States is even weaker than the counter assertion that having "U.K." in the domain name, which is the case here, is indicative that Caddy was only targeting his services to the United Kingdom. Neither provides much more than a slight indication of where a website may be located and does not establish to whom the website is directed. Accordingly, we reject these arguments.

**[13]** This leaves Pebble Beach's arguments that because Caddy's business is located in an area frequented by Americans, and because he occasionally services Americans, jurisdiction is proper. These arguments fail for the same reasons; they go to effects rather than express aiming. Pebble Beach's arguments do have intuitive appeal—they suggest a real effect on Americans. However, as reiterated throughout this opinion, showing "effect" satisfies only the third prong of the *Calder* test—it is not the "something more" that is required. In *Bancroft*, we stated that foreseeable effects alone are not sufficient to exercise jurisdiction, that "something more" is required and that " 'something more' is what the Supreme Court described as 'express aiming' at the forum state." 223 F.3d at 1087 (internal citations omitted). The "something more" additional requirement is important simply because the effects cited may not have been caused by the defendant's actions of which the plaintiff complains. Here, although Caddy may serve vacationing Americans, there is not a scintilla of evidence indicating that this patronage is related to

either Caddy's choice of a domain name or the posting of a passive website. Accordingly, we find no action on the part of Caddy expressly directed at the United States and conclude that an exercise of personal jurisdiction over Caddy would offend due process.

## B.  Jurisdictional Discovery

**[14]** The district court properly exercised its discretion by refusing to grant a continuance to allow Pebble Beach to conduct additional jurisdictional discovery. "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery . . . ." *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citing *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D. N.C. 1988)). Here, we have rejected Pebble Beach's assertion of personal jurisdiction based on Caddy's chosen domain name and website. As a matter of law, we have concluded that a passive website and domain name are an insufficient basis for asserting personal jurisdiction. Caddy's website is passive, and, therefore, additional discovery on this issue would not be helpful. Furthermore, the record was sufficiently developed for the district court to rule on all remaining issues pertaining to jurisdiction. As a result, there was no need for the district court to grant additional time for discovery.

## III

Caddy did not expressly aim his conduct at California or the United States and therefore is not subject to the personal jurisdiction of the district court. A passive website and domain name alone do not satisfy the *Calder* effects test and there is no other action expressly aimed at California or the

United States that would justify personal jurisdiction. Also, the district court exercised properly its discretion by denying additional jurisdictional discovery.

**AFFIRMED.**