**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

HOLLAND AMERICA LINE INC; and
WINDSTAR SAIL CRUISES LTD, on
behalf of themselves as former
agents, owners and operators of
the former vessel M/S/Y WIND
SONG, and together on behalf of
their subrogated insurers,

*Plaintiffs-Appellants,*

v.

WÄRTSILÄ NORTH AMERICA, INC.,

*Defendant,*

and

WÄRTSILÄ FINLAND OY; WÄRTSILÄ
CORPORATION; BUREAU VERITAS
S.A.; BUREAU VERITAS (CANADA)
INC.; BUREAU VERITAS NORTH
AMERICA, INC.,

*Defendants-Appellees.*

No. 05-35572

D.C. No.
CV-04-01368-RSM

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ricardo S. Martinez, District Judge, Presiding

Argued and Submitted
December 7, 2006—Seattle, Washington

Filed May 7, 2007

Before: Betty B. Fletcher, Susan P. Graber, and
M. Margaret McKeown, Circuit Judges.

5063

Opinion by Judge McKeown;
Partial Concurrence and Partial Dissent by Judge B. Fletcher

**COUNSEL**

Frank Brucculeri and Bradley M. Rose, Kaye, Rose, and Partners, Los Angeles, California, for the plaintiffs-appellants.

Christopher B. Kende and Rodney Q. Fonda, Cozen O'Connor, Seattle, Washington; and Gerald Zingone, Thelen Reid Brown Raysman & Steiner, LLP, Washington, D.C., for the defendants-appellees.

**OPINION**

McKEOWN, Circuit Judge:

At the heart of this tangled jurisdictional dispute is a simple but unfortunate accident. In 2002, the Wind Song, a Baha-

mian cruise ship, was sailing from Papeete, Tahiti, to Huahine, Tahiti. A fire broke out during the voyage, and it eventually spread through the ship, destroying the ship entirely. Holland America Cruise Line ("Holland America") and Windstar Sail Cruises ("Windstar") seek to hold defendants Bureau Veritas S.A. ("Bureau Veritas"), Bureau Veritas North America, Inc. ("BVNA"), Bureau Veritas (Canada) Inc. ("BV Canada"), Wärtsilä Corporation ("Wärtsilä"), and Wärtsilä Finland Oy ("Wärtsilä Finland"), among others, liable for the loss of the Wind Song. Before the suit can go forward, we must determine whether the United States District Court for the Western District of Washington may exercise jurisdiction over these parties. This interlocutory appeal concerns only that issue. We hold that the Western District of Washington was not the proper forum; we affirm the district court's dismissal of the Bureau Veritas entities for lack of venue and Wärtsilä and Wärtsilä Finland for lack of personal jurisdiction.

## BACKGROUND

The appeal involves multiple parties, both foreign and domestic. The underlying dispute arising from the accident is not before us. Nonetheless, in order to analyze the jurisdictional claims, we first identify the parties, put them in context, and summarize the proceedings in the district court.

## I. THE PARTIES

Holland America is a Washington corporation that operates passenger sail cruises. It also acts as an agent for some of its subsidiaries, including Windstar, in contracting for services and repairs. Windstar, a Bahamian corporation headquartered in Seattle, Washington, also operates passenger sail cruises and owned the Wind Song, the sunken ship at issue in this appeal.[1]

---

[1]Throughout this opinion, we refer to appellants collectively as "Holland America."

Bureau Veritas is a French classification society which sets standards for the quality and integrity of ships and performs ship surveys to determine compliance with the classification society's rules and regulations, national laws, and international conventions. BVNA, a separate Delaware corporation, provides classification surveys for vessel owners in the United States, and BV Canada is a Canadian corporation that performs similar services. Bureau Veritas surveyed the Wind Song before its launch, and Holland America claims that some combination of the Bureau Veritas entities failed to conduct adequate surveys, which in turn resulted in the loss of the ship.

The Wärtsilä entities consist of three separate companies: Wärtsilä, Wärtsilä Finland, and Wärtsilä North America ("Wärtsilä NA"). Wärtsilä is a Finnish holding company that indirectly owns both Wärtsilä Finland and Wärtsilä NA—it does not manufacture or design products. Wärtsilä Finland designs and manufactures marine engines, but did not supply the marine engine for the Wind Song. Wärtsilä NA, a Maryland corporation, sells, repairs, and services marine engines. Holland America alleges that some combination of these corporations either designed, manufactured, or sold a faulty engine part that may have contributed to the accident. Some but not all of the parts sold and used by Wärtsilä NA are manufactured by other Wärtsilä entities, including Wärtsilä Finland.

## II. PROCEDURAL BACKGROUND

In its first complaint, Holland America named multiple Wärtsilä entities and Bureau Veritas as defendants. After jurisdictional discovery, Wärtsilä Australia and Wärtsilä New Zealand were dismissed voluntarily from the case and Wärtsilä Finland was dismissed for lack of personal jurisdiction. The district court also granted Bureau Veritas's motion to dismiss on the ground that the French forum selection clause in

the contract between Bureau Veritas and Holland America governs the venue of any proceedings.

Holland America then twice amended its complaint to include defendants Wärtsilä, Wärtsilä NA, BVNA and BV Canada. Wärtsilä, BVNA and BV Canada subsequently moved to dismiss. The district court granted Wärtsilä's motion to dismiss for lack of personal jurisdiction. It also granted BVNA and BV Canada's joint motion to dismiss, holding that the French forum selection clause applied to BVNA and BV Canada, just as it applied to Bureau Veritas.

These orders left Wärtsilä NA as a party in the case. The district court entered a certification under Federal Rule of Civil Procedure 54(b) and thus we consider these jurisdictional issues in an interlocutory appeal.

## ANALYSIS

### I. BUREAU VERITAS ENTITIES

We first examine whether the district court properly dismissed the Bureau Veritas entities. We review for an abuse of discretion a dismissal based on a forum selection clause. *Murphy v. Schneider Nat'l Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (as amended). The trial court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 1138. However, the pleadings need not be accepted as true, and the court may consider facts outside the pleadings. *Id.* at 1137.

[1] Whether Holland America may litigate its dispute with the BV entities in Washington state depends on which of several contracts govern their relationship. Holland America claims that the Bureau Veritas entities agreed to a forum selection clause providing for venue in Washington. The Bureau Veritas entities dispute this proposition, relying on two earlier contracts that provide for dispute resolution in the Court of Nanterre, France.

Bureau Veritas and Windstar signed two contracts at the outset of their relationship. The first contract, in 1988, was made among Bureau Veritas, Windstar, and Barber Ship Management (Windstar's agent). The contract contained a forum selection clause which provided that "[a]ny dispute shall be submitted to the court of Nanterre (France)." The second contract, signed in 1991, by Bureau Veritas, Windstar, and Holland America contained the same clause. In June 2000, Bureau Veritas issued new general conditions that it attached to future surveying contracts. Article 12.3 of these new conditions provides that disputes other than those related to invoices are subject exclusively to arbitration in London and that English law applies.

Holland America alleges that its purchase orders for services and repairs include a forum selection clause that provides for all litigation to take place in federal court in Seattle or state courts in Washington. In support of its effort to bring the Bureau Veritas entities under the umbrella of this forum selection clause, Holland America offers a single affidavit stating that it placed telephone orders for surveys of the Wind Song by calling BV Canada and, more recently, BVNA, and that it emailed its terms and conditions to andre.laroche@ca.bureauveritas.com.

Even taking these facts as true, Holland America does not meet its burden to establish jurisdiction under the Washington forum selection clause. *See Dole Food Co. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002) (holding that plaintiffs must make a prima facie case for jurisdiction to survive a motion to dismiss). This case does not present a question of fact, but rather a lack of facts that even raise a question about jurisdiction. Indeed, the facts alleged are more notable for their omissions than their substance. Holland America offers not a single purchase order or email with any Bureau Veritas entity, let alone a purchase order with accompanying terms. Holland's bare assertions are just that—bare of any date, identity of contracting party, identity of transaction, or any other details that

would tie the unspecified purchase order to the allegations in the complaint. For example, Holland America never states that it delivered its terms to Bureau Veritas, much less claims that Bureau Veritas agreed to such terms. Holland America does not state when it emailed its terms to Andre LaRoche, who emailed them, or whether LaRoche or anyone at Bureau Veritas, BVNA, or BV Canada ever accepted them. If the terms were delivered after 2002, they would have no bearing on this dispute. (No copy of the purported email has been produced.) Nor does the mere placement of phone orders demonstrate anything about a written purchase order, let alone support a claim that those orders constituted an agreement meant to supersede the 1988 and 1991 contracts.

[2] Holland America's forum selection argument boils down to a claim that it emailed terms to someone at BV Canada. Nothing offered by Holland America even links this statement to a report or service order that is implicated in this dispute. In short, the facts and allegations in Holland America's complaint and its affidavits are too thin to meet its initial burden to support jurisdiction under the Washington forum selection clause.

Holland America makes much of the fact that, since 2000, Bureau Veritas may have bound its customers to new terms dictating resolution of contractual disagreements through arbitration in London. That fact does not change the result for Holland America. Regardless of whether the 1988 and 1991 contracts or the 2000 general conditions govern the relationship between Holland America and Bureau Veritas, none of the contracts would permit litigation to be brought in the Western District of Washington. But, just as significantly, Holland America does not claim to be bound by the post-2000 general conditions or any subsequent conditions adopted by Bureau Veritas.

[3] The forum selection clauses apply equally to BVNA and BV Canada because any transactions between those enti-

ties and Holland America took place as part of the larger contractual relationship between Holland America and Bureau Veritas. Our decision is informed by the closely analogous case of *Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988). Manetti-Farrow sought to avoid enforcement of a forum selection clause requiring litigation to be conducted in the Court of Florence. *See id.* at 511. The defendants included Gucci Parfums, a signatory to the contract, a variety of other Gucci-related companies, and several individuals who occupied prominent positions in the Gucci management hierarchy. *Id.* We held that the forum selection clause applied to all defendants, even though only Gucci Parfums signed the contract, because where the alleged conduct of the nonparties is closely related to the contractual relationship, "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Id.* at 514 n.5 (quoting *Clinton v. Janger*, 583 F. Supp. 284, 290 (N.D. Ill. 1984)). Just as the disputed conduct in *Manetti-Farrow* arose out of the contract with Gucci Parfums, the alleged conduct of BVNA and BV Canada is tied to Holland America's contract with Bureau Veritas.[2]

[4] Having determined that Holland America has not met its burden with respect to imposing the Washington state forum selection clause, we turn to whether it would be reasonable to give effect to the foreign forum selection clauses. As the Supreme Court counseled in *M/S Bremen v. Zapata Off-Shore Co.*, "in the light of present-day commercial realities and expanding international trade . . . the forum clause should control absent a strong showing that it should be set aside." 407 U.S. 1, 15 (1972). A forum selection clause may be unreasonable "(1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party

---

[2]Contrary to the concurrence's suggestion, the record reflects that one of the few things upon which the parties agree is that Holland America's relationship with BV Canada and BVNA arose out of and was intimately related to its relationship with Bureau Veritas.

wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought." *Murphy*, 362 F.3d at 1140.

Holland America does not argue that it was the victim of either fraud or overreaching, nor does it argue that it effectively would be deprived of its day in court if either clause were enforced. Instead, Holland America, through its experts,[3] claims that the Court of Nanterre, France, might decline to hear its suit because of Bureau Veritas's 2000 general conditions. The affidavits simply reveal that a French court would consider which clause is applicable. Our job at this juncture is not to predict the outcome of any proceeding in either French or British courts.

[5] Finally, for the first time on appeal, Holland America argues that the French forum provision contravenes public policy because it deprives Holland America of its right to a jury trial. Because this argument was not raised below, it is waived.[4] *Arizona v. Components Inc.*, 66 F.3d 213, 217 (9th Cir. 1995). The parties are sophisticated corporations that freely contracted with each other, and enforcement of the forum selection clause does not offend due process. Accord-

---

[3]The expert affidavit of the British barrister is emblematic of the weakness of Holland America's evidence in this jurisdictional battle. The lawyer claims no expertise in French law and his view, which does not address the issue at hand, is based on hearsay advice from unidentified French counsel.

[4]It bears noting that adoption of Holland America's Seventh Amendment argument would render contrary to public policy almost any forum selection clause providing for resolution in a foreign forum, as very few countries provide for jury trials in civil cases. *See In re Linee Aeree Italiane (Alitalia)*, 469 F.3d 638, 640 (7th Cir. 2006) (noting that few foreign countries have civil juries); *see also* Michael I. Krauss, NAFTA Meets the American Torts Process: *O'Keefe v. Loewen*, 9 Geo. Mason L. Rev. 69, 81 (2000) (noting that the use of juries in civil trials abroad is "extremely rare").

ingly, we hold that the district court did not abuse its discretion in dismissing Bureau Veritas, BVNA, and BV Canada on the basis of the forum selection clauses in Bureau Veritas's contracts with Holland America.

## II.   WÄRTSILÄ ENTITIES

Holland America advances three separate theories to support personal jurisdiction over the Wärtsilä entities. It asserts that jurisdiction may be exercised (1) pursuant to Holland America's forum selection clause; (2) based on the Wärtsilä entities' purposeful direction toward Washington; or (3) under Federal Rule of Civil Procedure 4(k)(2), which provides for nationwide service of process. We consider each of these arguments in turn, all of which are ultimately unpersuasive.[5]

### A.   JURISDICTION UNDER HOLLAND AMERICA'S FORUM SELECTION CLAUSE

[6] As with the Bureau Veritas defendants, Holland America first relies on the forum selection clause in its purchase orders to confer jurisdiction over Wärtsilä and Wärtsilä Finland. Under general contract principles, a forum selection clause may give rise to waiver of objections to personal jurisdiction, *see Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1406 (9th Cir. 1994), provided that the defendant agrees to be so bound, *see, e.g.*, *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 632 (9th Cir. 1982) (holding that the scope of a forum selection clause is a matter of contract). The fundamental element lacking here is any evidence that either Wärtsilä or Wärtsilä Finland agreed to the clause.

---

[5]Where, as here, the motion is based on written materials rather than an evidentiary hearing, we only inquire into whether Holland America's pleadings and affidavits make a prima facie showing of personal jurisdiction. *Dole*, 303 F.3d at 1108. Although a plaintiff cannot simply rest on the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true. *Id.* Conflicts in testimony in affidavits must be resolved in Holland America's favor. *Id.*

**[7]** Holland America's jurisdictional claim rests on flimsy evidence: Holland America alleges that it conveyed its form terms (including the forum selection clause) to an unidentified email address ending in @wärtsilä.com, and that the Wärtsilä entities had notice of the terms because they appear on Holland America's website. The missing and critical evidence is telling. Holland America has not provided us any of the following via allegations or evidence: a copy of the terms email; the name of any person who might have been on the receiving end of the email; any evidence of any assent to the terms by either Wärtsilä or Wärtsilä Finland; the name, position, or the individual within Holland America who might have sent the email; or the purchase orders related to the claims at issue. We agree with the district court that "it is not enough that plaintiffs allege to have sent the terms via email to an unspecified email address or general web address." Such an unsubstantiated and vague statement does not establish a prima facie case for jurisdiction.

Alternately, Holland America contends that Wärtsilä NA, which consented to its forum selection clause, acted as an agent for both Wärtsilä Finland and Wärtsilä for the purpose of consenting to jurisdiction. Here, too, the allegation is just that, an allegation without any evidence. Holland America urges us to look to the distributorship agreement between Wärtsilä Finland and Wärtsilä NA. However, Wärtsilä NA produced testimony that Wärtsilä NA was unaware of any occasion when Wärtsilä NA had acted as an agent for Wärtsilä Finland in a U.S. transaction, and there is no evidence that Wärtsilä NA had the authority to consent to jurisdiction for Wärtsilä Finland. Wärtsilä was not a party to that agreement, and Wärtsilä categorically has denied allowing Wärtsilä NA to serve as its agent for the purpose of consenting to litigation in the Western District of Washington.

**[8]** In the face of such unequivocal denials, Holland America offers nothing in response. Neither the agreement nor the bare evidence supports Holland America's effort to bind

Wärtsilä or Wärtsilä Finland by virtue of any agency relationship. *Cf. Terracom v. Valley Nat'l Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (affirming district court's denial of discovery where "a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants") (internal quotation marks omitted).

### B. PERSONAL JURISDICTION IN THE ABSENCE OF AN APPLICABLE FORUM SELECTION CLAUSE

We next consider Holland America's alternative arguments that the district court may exercise jurisdiction over Wärtsilä and Wärtsilä Finland either based on purposeful direction toward Washington or based on specific jurisdiction under Federal Rule of Civil Procedure 4(k)(2), which provides for nationwide service of process.[6] *See Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984) (clarifying that specific jurisdiction is appropriate where the suit arises out of a defendant's contacts with the forum); *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291-92 (11th Cir. 2000) (discussing both general and specific jurisdiction under Rule 4(k)(2)).

### 1. JURISDICTION BASED ON PURPOSEFUL DIRECTION TOWARD WASHINGTON

[9] Holland America's assertion of personal jurisdiction over Wärtsilä and Wärtsilä Finland must satisfy the Supreme Court's oft-articulated requirement that specific personal jurisdiction must "aris[e] out of or related to the defendant's contacts with the forum." *Helicopteros*, 466 U.S. at 414 n.8. Here, the jurisdictional claim fails on both counts. The evi-

---

[6]At oral argument, counsel for Holland America asserted that general jurisdiction over both Wärtsilä entities would be proper, but that argument was not properly preserved for appeal because Holland America did not raise it in its opening brief. *Components Inc.*, 66 F.3d at 217.

dence supports neither sufficient contacts with the forum nor the requisite nexus between Holland America's claims and the Wärtsilä parties' contacts with Washington.

### a.    STREAM OF COMMERCE/PURPOSEFUL AVAILMENT

Because there is no real connection between Wärtsilä and Wärtsilä Finland and Washington, Holland America relies on the proposition that those companies sold products or sponsored web marketing for products that ended up in Washington. Neither is sufficient to sustain jurisdiction here.

[10] The placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). Even a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state. *Id.*

[11] Wärtsilä itself has not put *any* products into the stream of commerce that might have ended up in the forum, whether through a distributorship agreement or otherwise. That alone ends the inquiry. To the extent that Holland America seeks to impute the activities of Wärtsilä NA to Wärtsilä, this argument has little traction. It is well established that, as a general rule, where a parent and a subsidiary are separate and distinct corporate entities, the presence of one, i.e., Wärtsilä NA, in a forum state may not be attributed to the other, i.e., Wärtsilä. *Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001).

Nor do the allegations against Wärtsilä Finland support a theory of purposeful availment. *Asahi* requires "something more" than the mere placement of a product into a stream of commerce, and Holland America has failed to demonstrate the requisite extra showing here. *See Asahi*, 480 U.S. at 111.

A close reading of the record also reveals the paucity of contacts between Wärtsilä Finland and Washington. Wärtsilä Finland sells no products directly into the United States. A marketing representative occasionally visits the United States to keep cruise lines informed of Wärtsilä Finland's propulsion system offerings, but none of these visits took place in Washington. Although Holland America alleges that Wärtsilä Finland "sends representatives to various industry trade shows in Washington," this allegation stems from a document demonstrating that employees of Wärtsilä NA *may* conduct marketing activities on behalf of Wärtsilä Finland, not that they actually do. Similarly, although Holland America alleges that Wärtsilä Finland conducts product training in the United States, the documents do not specify a location for this training.

[12] Holland America points to the Wärtsilä consortium's entirely passive website and Wärtsilä's advertisements in various marine publications as evidence of a marketing presence in Washington. We consistently have held that a mere web presence is insufficient to establish personal jurisdiction. *See, e.g.*, *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997). The Wärtsilä website does not provide any direct means for purchasing parts or requesting services; it simply provides information on the various products manufactured by the Wärtsilä consortium and redirects potential customers to the appropriate subsidiary. This type of passive website is not purposefully directed to the forum state of Washington. Nor do any print advertisements that incidentally may have made their way to Washington support a finding of jurisdiction without more substantial evidence of contacts with the state. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1158 (9th Cir. 2006). Holland America has provided the court with a copy of a single advertisement; there is no evidence that this advertisement was designed specifically for the Washington market, or that advertisements are heavily or predominantly distributed in Washington. In sum, Holland

America has not demonstrated that Wärtsilä or Wärtsilä Finland's extraordinarily limited contacts with Washington give rise to personal jurisdiction there.

Alternately, Holland America asks us to apply the "effects" test of *Calder v. Jones*, 465 U.S. 783, 788-89 (1984), claiming that the effect of Wärtsilä's activities was felt in Washington. We decline to apply *Calder* because it is well established that the *Calder* test applies only to intentional torts, not to the breach of contract and negligence claims presented here. *See id.* at 789 (distinguishing between intentional action and "mere untargeted negligence"); *see also Dole*, 303 F.3d at 1111 ("Under our precedents, the purposeful direction or availment requirement for specific direction is analyzed in intentional tort cases under the 'effects' test derived from *Calder v. Jones*."); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000) (emphasizing that *Calder* requires the defendant to individually and wrongfully target the plaintiff). Contrary to Holland America's contentions, the *Calder* line of cases is inapposite and does not support a finding of jurisdiction.

### b.   NEXUS REQUIREMENT

**[13]** Unlike general jurisdiction, specific jurisdiction is tethered to a relationship between the forum and the claim. *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 271 (9th Cir. 1995). That relationship is missing here. The injury occurred in Tahiti, not Washington. The engine that blew up was manufactured in France, with no connection to Washington. And even if the claim stems from a defective fuel line, Holland America offered no specific allegations as to when or where the fuel line used on the Wind Song was purchased or installed; it has alleged only that Wartsila NA once mailed to Seattle a replacement part for one of the Wind Song's sister ships.

## 2. JURISDICTION UNDER RULE 4(K)(2)

**[14]** In a final effort to sustain jurisdiction, Holland America invokes Federal Rule of Civil Procedure 4(k)(2), the nationwide jurisdiction provision. We reject this argument. Wärtsilä and Wärtsilä Finland's contacts with the United States are only marginally more significant than their contacts with Washington and do not support a finding of nationwide jurisdiction.

Rule 4(k)(2) provides:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Rule 4(k)(2) is not limited to the contours of a state long-arm statute. Instead, a court may exercise jurisdiction when three requirements are met. First, the claim against the defendant must arise under federal law—a point undisputed in this case because Holland America asserts admiralty claims. *Pebble Beach Co.*, 453 F.3d at 1159; *see also World Tanker Carriers Corp. v. MV Ya Mawlaya*, 99 F.3d 717, 723 (5th Cir. 1996). Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. *Pebble Beach Co.*, 453 F.3d at 1159. Third, the federal court's exercise of personal jurisdiction must comport with due process. *Id.*

**[15]** With respect to the second requirement, neither Wärtsilä nor Wärtsilä Finland has alleged that it is subject to the courts of general jurisdiction in any state. Indeed, Wärtsilä Finland has specifically stated that it is not subject to the courts of general jurisdiction in any state. Ordinarily, the

plaintiff bears the burden of proving personal jurisdiction over the defendant. However, proving the lack of personal jurisdiction in every state could be quite onerous, and it is the defendant, not the plaintiff, that likely possesses most of the information necessary to do so. *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 40-41 (1st Cir. 1999). Accordingly, we join the Fifth, Seventh, and D.C. Circuits in holding that

> [a] defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed. Naming a more appropriate state would amount to a consent to personal jurisdiction there . . . . If, however, the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2). This procedure makes it unnecessary to traipse through the 50 states, asking whether each could entertain the suit.

*ISI Int'l, Inc., v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001) (citations omitted); *see also Adams v Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004) ("We agree with the Seventh Circuit, that a piecemeal analysis of the existence *vel non* of jurisdiction in all fifty states is not necessary. Rather, so long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction."); *Mwani v. bin Laden*, 417 F.3d 1, 11 (D.C. Cir. 2005) (adopting the Seventh Circuit's approach). Thus, absent any statement from either Wärtsilä or Wärtsilä Finland that it is subject to the courts of general jurisdiction in another state, the second requirement of Rule 4(k)(2) is met.

The third requirement—that the exercise of personal jurisdiction comport with due process—presents a major stumbling block for Holland America because of the limited contacts of Wärtsilä and Wärtsilä Finland with the United

States. The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the Wärtsilä entities and the forum state, we consider contacts with the nation as a whole. *Pebble Beach Co.*, 453 F.3d at 1159 ("The due process analysis is identical to the one discussed above when the forum was California, except here the relevant forum is the entire United States."); *accord World Tanker Carriers Corp.*, 99 F.3d at 723-24.

**[16]** The contacts between the Wärtsilä entities and the United States can only be described as scant, fleeting, and attenuated. Neither Wärtsilä nor Wärtsilä Finland has offices, employees, or other related connections in the United States. As noted earlier, the Wärtsilä website is not targeted to the United States. Nothing in the record links Wärtsilä to this country except a one-time presentation at a single cruise ship "leadership forum" in Miami, Florida, where Wärtsilä also sponsored a reception and dinner tables. This isolated incident does not support jurisdiction under Rule 4(k)(2). *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (holding that a defendant should not be haled into court as a result of "random," "fortuitous," or "attenuated" contacts and declining to exercise Rule 4(k)(2) jurisdiction when the defendant had made seven individual shipments to the East Coast).

Wärtsilä Finland's contacts, albeit slightly more numerous than Wärtsilä's, still are too insignificant to invoke nationwide jurisdiction. Holland America has not supported its non-specific claim that Wärtsilä Finland authorizes Wärtsilä NA to conduct marketing on its behalf, and Wärtsilä Finland's occasional visits to cruise ships and unspecified advertising in various marine publications hardly constitute significant contacts.

**[17]** The few cases in which our sister circuits have concluded that Rule 4(k)(2) conferred jurisdiction have involved

defendants with much more extensive contacts to this country. *See, e.g.*, *Mwani*, 417 F.3d at 13 (holding that jurisdiction could be exercised where defendants had engaged in numerous conspiracies to bomb the World Trade Center, the United Nations, and the Lincoln and Holland Tunnels); *Adams*, 364 F.3d at 651 (upholding personal jurisdiction under Rule 4(k)(2) where the defendant insurer had directly insured hundreds of claims in the United States). Indeed, in the fourteen years since Rule 4(k)(2) was enacted, none of our cases has countenanced jurisdiction under the rule. Holland America failed to make a prima facie showing that Rule 4(k)(2) confers jurisdiction over either Wärtsilä Finland or Wärtsilä. Accordingly, we affirm the district court's dismissal of Wärtsilä Finland and Wärtsilä for lack of personal jurisdiction.

**AFFIRMED.**

---

B. FLETCHER, Circuit Judge, concurring and dissenting:

I concur in the judgment and concur in the opinion's reasoning regarding the Wärtsilä entities and the lack of jurisdiction under Holland America's forum selection clause.

However, I cannot concur in the section of the opinion that affirms dismissal of BVNA and BV Canada on the basis of the forum selection clauses. The record contains no evidence that the contracts containing those clauses, which were signed by Holland America and Bureau Veritas, S.A., governed any work performed by BVNA or BV Canada. *Cf. Manetti-Farrow, Inc. v. Gucci America, Inc.*, 858 F.2d 509 (9th Cir. 1988) (applying a forum selection clause to nonsignatories where the claims were intertwined with the contract containing the clause). I respectfully dissent from that section of the opinion.

Nevertheless, the evidence shows a lack of personal jurisdiction (either specific or general) in Washington over either

BVNA or BV Canada. Therefore, I concur in the judgment as to BVNA and BV Canada.