**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| TEXAS FARMERS INSURANCE COMPANY, | No. 08-55835 |
| Plaintiff - Counter-Defendant-Appellant, | D.C. No. 06-cv-8220-DDP-AJW |
| v. | MEMORANDUM* |
| LEXINGTON INSURANCE COMPANY, | |
| Defendant - Counter-Claimant-Appellee. | |

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted October 8, 2009
Pasadena, California

Before: KLEINFELD and TALLMAN, Circuit Judges, and LAWSON,** District
Judge.

---

\* This disposition is not appropriate for publication and is not precedent except as
provided by Ninth Circuit Rule 36-3.

\*\* The Honorable David M. Lawson, United States District Judge for the Eastern
District of Michigan, sitting by designation.

Texas Farmers Insurance Company appeals from a summary judgment granted by the district court declaring that Texas Farmers is responsible for the full amount of a settlement of a medical malpractice claim. We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

Like the district court, we view this case as a dispute between a primary insurer (Texas Farmers) and an excess insurer (defendant Lexington Insurance Company), even though Lexington did not have a direct relationship with the insured, Kaiser Permanente. The actual excess carrier, Ordway Indemnity Ltd., which provided a $10 million excess policy to Kaiser, ceded the risks involved in this case to Lexington by means of a "following-form" facultative reinsurance policy that Lexington issued to Ordway. Lexington, therefore, stood in Ordway's place with respect to the claims made by the underlying plaintiff. The central issue in the case focuses on the event(s) that triggered coverage under the respective policies and the claims that were included in the settlement.

It is undisputed that the malpractice plaintiff, Janice Kupukaa, who suffered from diabetic retinopathy, underwent two eye surgeries at Kaiser Permanente of Hawaii on July 9, 2001 and November 6, 2001, and those surgeries left her blind. It also is undisputed that Ms. Kupukaa had been treating with Kaiser Permanente for diabetes beginning in the late 1990s. On April 9, 1999, Texas Farmers issued

2

to Kaiser Permanente a claims-made policy – transformed into an occurrence policy by endorsement – covering a one-year period with a liability limit of $5 million per claim, and renewed the policy for another year.  It reduced its coverage to $1 million per claim on April 9, 2001, effective through April 9, 2002. Lexington (through Ordway) did not come on the risk until the 2001-2002 policy period.  The district court properly characterized the legal issue as whether Texas Farmers's coverage was triggered prior to April 9, 2001, when the $5 million liability limit was in effect, and before Lexington came on the risk.

When Janice Kupukaa and her husband, Joseph, filed their lawsuit against Kaiser Permanente and Dr. Steven Miller, their complaint was based entirely on Dr. Miller's negligence in performing the 2001 eye surgeries.  But when the case moved to arbitration, the record is clear that the parties stipulated to add the claim that Kaiser Permanente's negligent treatment of Ms. Kupukaa's diabetes before 2001 caused kidney damage requiring her to undergo dialysis.  There is no dispute that during her treatment at Kaiser Permanente, Ms. Kupukaa developed diabetic nephropathy that required dialysis and proliferative diabetic retinopathy that required eye surgery.  So at the time of the settlement on February 28, 2007, both claims were on the table and both were resolved by the settlement agreement, in

3

which the Kupukaas agreed to release "all claims which are, or might have been, the subject matter of the Arbitration." ER 435-36.

Texas Farmers argues that its retained defense counsel in the underlying tort case did not think much of the kidney damage claim, and the main purpose of the settlement was to discharge the eye surgery claim. It insists therefore that there is a factual dispute over which claims were settled. It also contends that even if the kidney damage claim were included in the settlement, there is no evidence that the claim arose before the 2001-2002 policy period because the occurrence language in its policy requires that the injury manifest itself during the coverage period. Texas Farmers contends further that a claim for interrelated wrongful acts will be considered to have been made "on the earliest date written notice of such Claim is received by any Insured," Appellant's Br. at 31 (quoting ER 340), which was after April 9, 2001. Neither the relevant policy language, the record, nor the law favors these arguments.

First, Texas Farmers' policy "applies to claims or suits brought as a result of Wrongful Acts . . . and/or Occurrences which take place during the Coverage Period." ER 393. The determination of the occurrence date is subject to the "Interrelated Wrongful Act" provision; interrelated wrongful acts are wrongful acts or occurrences "which are logically or causally connected and have as a common

4

nexus any fact, circumstance, situation, event, transaction or series of facts, circumstances, situations, events or transactions. Any such Interrelated Wrongful Acts shall be deemed to have happened at the time of the first Wrongful Act within those Interrelated Wrongful Acts." *Id.* at 367. Texas Farmers conceded in the district court that the kidney damage claims and the eye surgery claims were interrelated wrongful acts.

Second, Texas Farmers's policy defines "occurrence" to mean "an accident." ER 370. There is no reference in the policy to a manifestation requirement. Applying California law (which the parties agree applies here), we have held that coverage under an occurrence policy is triggered when "the complaining party was actually damaged," not when the wrongful act was committed. *Smith v. Hughes Aircraft Co.*, 22 F.3d 1432, 1440 (9th Cir. 1994), superseding 10 F.3d 1448 (quoting *Chu v. Canadian Indem. Co.*, 224 Cal. App. 3d 86, 274 Cal. Rptr. 20, 25-26 (1990)). The record in this case shows that Ms. Kupukaa's diabetes had progressed to the point of causing kidney damage that should have been detected by her physicians in 1999 and 2000, had they not failed to seek a nephrology consult. SER 110-13, 115-21. That evidence is not disputed in this record.

Third, as mentioned, the settlement documents show that the settlement in this case included all the claims, including the kidney damage claims. Texas

Farmers cites *Safeco Ins. Co. of Am. v. Sup. Ct.*, 140 Cal. App. 4th 874, 881 (2006), for the proposition that the scope of an insurer's duty to indemnify can remain open when the underlying dispute is resolved by settlement. True enough. But when a case settles, "the insurer's obligation to pay and the determination of coverage must be based upon the facts inherent in the settlement and, because this is a summary judgment proceeding, the undisputed facts." *In re Feature Realty Litig.*, 468 F. Supp. 2d 1287, 1295 (E.D. Wash. 2006). Although Texas Farmers insists that the eye surgery claim was the motive force behind Kaiser Permanente's willingness to settle, it is undisputed that the settlement included the kidney damage claim as well.

Fourth, the "Interrelated Wrongful Act" provision establishes the trigger-of-coverage date "at the time of the first Wrongful Act," which in this case was prior to the 2001-2002 policy period. The argument that the effective trigger date is when the first written notice of a claim was received ignores the fact that Texas Farmers issued an endorsement that superseded the claims-made language and converted the contract to an occurrence policy. Therefore, Texas Farmers's $5-million-per-claim liability limit was in effect on the imputed loss date. Because the $3.2 million settlement with the Kupukaas did not exhaust the primary coverage,

Ordway's excess policy – and Lexington's reinsurance obligation – were not triggered.

Texas Farmers argues that as a reinsurer, Lexington was obliged to "follow the settlement" and pay a share of the obligation. The district court held that the follow-the-settlement doctrine did not apply in this situation, and we agree. That doctrine "prevents facultative reinsurers 'from second guessing good-faith settlements and obtaining de novo review of judgments of the reinsured's liability to its insured.'" *Nat'l Am. Ins. Co. v. Certain Underwriters at Lloyd's London*, 93 F.3d 529, 535 (9th Cir. 1996) (quoting *North River Ins. Co. v. CIGNA Reins. Co.*, 52 F.3d 1194, 1199 (3d Cir. 1995)). Lexington was not Texas Farmers's reinsurer, and therefore it could incur no liability to Texas Farmers under the follow-the-settlement doctrine.

Finally, Texas Farmers argues for the first time on appeal that Ordway was not an excess carrier and that its coverage was concurrent, thereby creating a contribution obligation under the "other insurance" clause for losses exceeding $1 million in primary coverage. We generally do not entertain an appellate argument that was not "raised sufficiently for the trial court to rule on it." *Arizona v. Components, Inc.*, 66 F.3d 213, 217 (9th Cir. 1995) (internal citation and quptation marks omitted). "[A]rguments not raised by a party in its opening brief are

7

deemed waived." *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) (citing

*Brookfield Communications, Inc. v. West Coast Entm't Corp.*, 174 F.3d 1036, 1046

n.7 (9th Cir. 1999)).

Lexington has filed a motion to strike Texas Farmers's reply brief because it raises new arguments. We do not reach those arguments, having found them to be waived. The motion to strike the reply brief is denied as moot. The judgment of the district court is **AFFIRMED**.